**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO.: _____

WESCO INSURANCE COMPANY,
a Delaware Corporation,

      Plaintiff,

v.

IRA FINANCIAL GROUP, LLC, a Florida
Limited Liability Company; and IRA
FINANCIAL TRUST COMPANY, a South
Dakota Corporation,

      Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, WESCO INSURANCE COMPANY ("Plaintiff" or "Wesco"), by and through its undersigned counsel, hereby files this Complaint for Declaratory Judgment against Defendants, IRA FINANCIAL GROUP, LLC ("IRA Group") and IRA FINANCIAL TRUST COMPANY ("IRA Trust") (collectively, "IRA" or the "Defendants"), and states as follows:

## NATURE OF THE ACTION

In this action, brought pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, Wesco seeks a declaration of its rights and obligations under a policy of insurance Wesco issued to IRA in connection with the following: (i) a lawsuit brought by MARSHALL GRIFFIN ("Griffin") against IRA Trust and GEMINI TRUST COMPANY, LLC ("Gemini"), which was filed in the United States District Court for the Northern District of California, and captioned *Griffin v. Gemini Trust Company, LLC, et al.*, Case No: 3:22-cv-01747-CRB (the "Griffin Lawsuit"); (ii) numerous Arbitration Demands brought by more than 100

individual claimants[1] against IRA, Gemini, and/or Adam Bergman, which were filed before the American Arbitration Association ("AAA") and Judicial Arbitration and Mediation Services ("JAMS") (collectively, the "Arbitration Demands"); and (iii) numerous other claims, demands, and complaints submitted by Gemini and various IRA customers (collectively, the "Customer Demands"). The persons and/or entities who filed or submitted arbitration claims or other claims, demands, or complaints, shall collectively be referred to as the "Claimants". The "Griffin Lawsuit," the "Arbitration Demands," and the "Customer Demands" shall collectively be referred to as the "Claims". A copy of the Complaint filed in the Griffin Lawsuit is attached hereto as **Exhibit "1"**. A copy of the Arbitration Demand submitted to the AAA is attached hereto as **Exhibit "2"**. Copies of the Arbitration Demands submitted to JAMS are attached hereto as **Composite Exhibit "3"**. Copies of the Customer Demands are attached hereto as **Composite Exhibit "4"**.

---

[1] The arbitration claimants are Judy Halaby; David Seki, IRA; Philip E. Miller Traditional IRA; Philip E. Miller Roth IRA; Ahuva Stadtlander Traditional IRA; Brian Salvucci, IRA; Graciela Gomez-Stahl Traditional IRA; Harpreet Saini Traditional IRA; Michael McClellan Roth IRA; Kunal Patel; Bhavita Patel; Pramod Patel; Daxobahen Patel; Rhett Daniel IRA; Mark Moniz, IRA; Eric Sztanyo; Esther Bejar; John Tarantino; Justin Good; Phillip Tasto; Lonnie Ogulnick; Jason Furbert; Nilofer Kreonidis; David Benham; Gary Lemons; Donald Benningfield; Heather Hurd; Jason Hurd; Bryan Allen; Eric Koziel; Daniel Guth; Diane Guth; Chris Carden; Robert (Corey) Hill; Jason Hosey; Kenneth Teter; Leah Decosta; Donn Murakami; Branon White; Jennifer Hansen; Mary Jammet; Thomas Lambro; Donald J. Hardwood; Nathaniel Dixon; Jacinto Cua, Jr.; Scott Kortright; Michael Abrahamsen; Singar Balasubramanian; Lauren Camara; Jennifer Oeltjen; Mia Shanholtzer; Tom Cui; Daniela de Waal; Yvette Benson; Chad Marlow; Jason Loik; Graham Miller; Tobias Falzone; Robert Scot Hastings; Marc Selter; Magdalina Fridman (representing Laura Harris); Bernard Barton; Helio Carrilho; Ping Yee; Jay Kim; Shane Campbell; Dan Waltz; Michael Kevin Cozzi; Jeffrey Anderson; Joseph O'Halloran; Eric Seward; Charles Holmgreen; Alicia Hendrix; Josue Brainin; Brian May; Gregory Thompson; Timothy Thomas; Judie Boxill; Thomas Cordano; Rebecca Nguyen; Clint Bogue; George Marcus Sherwin; Marina Sherwin; Rebecca Hutchinson; Ruchi Shah; David Ruest; Lisa Ruest; Scott Smith; Roosevelt Cooper; Ching-Kang Chen; Matthew Stasium; Jordan Dialectos; Sean Orelli; David Tsuei; Benjamin Krzyzewski; Jessica Chervin; Perry Batchelor; Wayne Worthington; Nellie Aguilar-Miller; Craig Kornick; Gary Tolson; Ann Marie Bugler; Gary Mattox; Glynn Shaw; Yelena Shmidt; Sameer Halai; and Ryan Iseman.

1.      Wesco seeks a declaration that: (a) it does not owe a duty to advance and/or reimburse defense costs to IRA in connection with the Claims; and (b) it does not owe a duty to indemnify IRA for any damages awarded or judgments entered in connection with the Claims.

2.      As discussed herein, the Claims seek to recover damages for IRA's alleged failure to use reasonable measures and comply with applicable industry standards to protect the private information and assets of Griffin, the Claimants, and others similarly situated.

3.      This insurance coverage action is brought to determine the rights and obligations of the parties in connection with a Financial Institution Insurance Policy issued by Wesco to IRA Group, bearing policy number WDO1809368 02 for the policy period effective from March 3, 2021 to March 3, 2022 (the "Policy"). IRA Trust is listed as an Insured per the Policy's Additional Insured Endorsement (Form PL990221 0414). A true and correct copy of the Policy is attached hereto as **Exhibit "5"**. An actual and justiciable controversy exists with respect to the Policy.

## THE PARTIES

4.      Plaintiff, Wesco, is a business entity organized under the laws of the State of Delaware with its principal place of business in the State of New York. Wesco is authorized to conduct business throughout the State of Florida. Wesco is therefore a citizen of Delaware and New York for purposes of diversity jurisdiction and is otherwise *sui juris*.

5.      Defendant, IRA Group, is a Florida Limited Liability Company organized and existing under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida. IRA Group has one member, Adam Bergman, who is a citizen of Miami-Dade County, Florida. IRA Group is therefore a citizen of Florida and is otherwise *sui juris*.

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, Suite 3050, Miami, Florida 33131
Tel: (305) 530-0800 Fax: (305) 530-0801

6.      Defendant, IRA Trust, is a business entity organized under the laws of the State of South Dakota with its principal place of business in the State of South Dakota. IRA Trust is therefore a citizen of South Dakota and is otherwise *sui juris*.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1) because there is complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8.      This Court has personal jurisdiction over the Defendants because the Defendants are either residents of, conduct substantial business in, or have sufficient minimum contacts with the State of Florida.

9.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391 because at least one (1) of the Defendants is domiciled in this District.

10.     Pursuant to Local Rule 3.1, this matter is properly instituted in the Miami Division of the Southern District of Florida, as the insurance policy that is the subject of this action was delivered to the Insureds in Miami-Dade County, Florida.

## THE CLAIMS

### I.      The Griffin Lawsuit

11.     On or about March 18, 2022, Griffin, on behalf of himself and all others similarly situated (the "Class Members"), filed a Class Action Complaint in the Griffin Lawsuit (the "Griffin Complaint") against IRA Trust and Gemini in the United States District Court for the Northern District of California, bearing case number 3:22-cv-01747-CRB.

12.     The Griffin Lawsuit stems from "a data breach class action brought on behalf of **consumers whose retirement savings were stolen** by cybercriminals in a massive cyber-attack at IRA [Trust] – one of a handful of firms that runs certain of its retirement account services through Gemini (a leading cryptocurrency exchange) – in or around February 2022 (the "Data Breach")." Ex. 1 at ¶ 1 (emphasis in original).

13.     According to the Griffin Complaint, "[t]he Data Breach reportedly resulted in at least $36 million in crypto currency stolen from Class Members' individual retirement accounts ("IRAs"), including [Griffin] who lost 2 Bitcoins worth approximately $85,000." *Id.*

14.     The Griffin Complaint alleges that IRA Trust and Gemini failed to use reasonable measures to protect private information and/or monies in their possession, including those of Griffin and the putative Class Members, and did not comply with applicable industry standards. *Id.* at ¶¶ 5, 77-80.

15.     The Griffin Complaint further contends that "[a]s a result of the Data Breach, [Griffin] and Class Members suffered ascertainable losses in the form of actual monies, loss of the benefit of their contractual bargain, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack," as well as damages associated with the loss and/or compromise of their private information. *Id.* at ¶¶ 3, 81, 111-120.

16.     The Griffin Complaint asserts the following causes of action on behalf of Griffin and the putative Class Members: (1) Negligence; (2) Negligence *Per Se*; and (3) Breach of Implied Contract. *Id.* at ¶¶ 147-178.

17.     The Griffin Complaint demands judgment against IRA Trust and Gemini and seeks the following relief:

   a.   An order certifying the Class as defined [in the Griffin Lawsuit], and appointing [Griffin] and [his] counsel to represent the Class;

b.   An order enjoining [IRA Trust and Gemini] from engaging in the wrongful conduct alleged [in the Griffin Lawsuit] concerning disclosure and inadequate protection of the [personally identifiable information] belonging to [Griffin] and Class Members;

c.   An order requiring [IRA Trust and Gemini] to:

  i.   Engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on [IRA Trust and Gemini's] systems on a periodic basis, and ordering [IRA Trust and Gemini] to promptly correct any problems or issues detected by such third-party security auditors;

  ii.   Engage third-party security auditors and internal personnel to run automated security monitoring;

  iii.   Audit, test, and train their security personnel regarding any new or modified procedures;

  iv.   Segment their user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of [IRA Trust and Gemini's] systems;

  v.   Conduct regular database scanning and security checks;

  vi.   Routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

  vii.   Purchase credit monitoring services for [Griffin] and Class Members for a period of ten years; and

  viii.   Meaningfully educate [Griffin] and Class Members about the threats they face as a result of the loss of their private information to third parties, as well as the steps they must take to protect themselves.

d.   An award of compensatory, statutory, and nominal damages in an amount to be determined at trial;

e.   An order instructing [IRA Trust and Gemini] to purchase or provide funds for credit monitoring services for [Griffin] and all Class Members;

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, Suite 3050, Miami, Florida 33131
Tel: (305) 530-0800 Fax: (305) 530-0801

       f.   An award for equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of [IRA Trust and Gemini's] wrongful conduct;

       g.   An award of reasonable attorneys' fees, costs, and litigation expenses, as allowable by law; and

       h.   Such other and further relief as this Court may deem just and proper.

*Id.* at pp. 40-41, at "Wherefore" Clause.

18.     Griffin's claim was tendered to Wesco by IRA for advancement and/or reimbursement of defense costs and indemnity.

19.     Upon receipt of notice of the Griffin Lawsuit, Wesco conducted a timely coverage investigation with regard to the Griffin Lawsuit and issued a Reservation of Rights, including the right to file a declaratory judgment at any time to determine its duties to advance and/or reimburse defense costs, or provide indemnity in relation to the Griffin Lawsuit.

20.     On July 29, 2022, the District Court in the Griffin Lawsuit entered its Order Granting Gemini's Motion to Compel Arbitration and to Stay Litigation and IRA Trust's Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer to South Dakota. In essence, the Court determined that there was a valid arbitration agreement warranting the arbitration of Griffin's claims against Gemini, and further held that venue was improper in the Northern District of California as to Griffin's claims against IRA. Accordingly, the Court dismissed Griffin's claims against IRA, without prejudice, and granted Griffin leave to amend to attempt to overcome the pleading deficiencies regarding venue.

21.     Griffin was given thirty (30) days to file an amended complaint, but failed to do so. Therefore, on September 9, 2022, the District Court in the Griffin Lawsuit dismissed the Griffin Complaint against IRA, with prejudice.

## II.       The Arbitration Demands

22.       On or about June 21, 2022, Judy Halaby ("Halaby") filed her Itemized Claims for Damages and Other Relief (the "Halaby Demand") against IRA, Gemini, and Adam Bergman ("Bergman")[2] before the AAA, bearing case number 01-22-0002-1412.

23.       According to the Halaby Demand, "[o]n February 8, 2022, 374 ETH [Ethereum] was stolen from [Halaby's] IRA account without her knowledge, . . . totaling an estimated market value of $1.2 million." Ex. 2 at ¶¶ 25, 43.

24.       According to the Halaby Demand, Halaby "was not the only IRA Account holder whose cryptocurrency was stolen on February 8, 2022, as dozens of IRA Accounts were also drained of their cryptocurrency at the same time." *Id.* at ¶ 45.

25.       The Halaby Demand alleges, *inter alia*, that IRA, Gemini, and Bergman made materially false misrepresentations to Halaby about their security practices and failed to adopt and maintain sufficient security measures and practices to protect and safeguard Halaby's account and cryptocurrency. *Id.* at ¶¶ 62-63, 69-71.

26.       The Halaby Demand further contends that because of IRA, Gemini, and Bergman's "negligent actions, omissions and false statements, [Halaby] has sustained significant damages." *Id.* at ¶ 60.

27.       The Halaby Demand asserts the following causes of action: (1) Negligence; (2) Fraud; (3) Breach of Fiduciary Duty; (4) Breach of Implied Contract; (5) Breach of Express Contract; and (6) Violation of New York Consumer Protection from Deceptive Practices Act, NY Gen. Bus. § 349 (against Gemini only). *Id.* at ¶¶ 61-124.

---

[2] Upon information and belief, Adam Bergman is the founder and Chief Executive Officer of IRA Group and IRA Trust.

28.     The Halaby Demand seeks an award in Halaby's favor of 374 ETH (or the estimated cash value of $1.2 million); amounts sufficient to pay for the costs and fees to obtain a private letter of ruling from the Internal Revenue Service for the return of her property and for the taxes that will be realized upon the return of said property (or it cash value), plus interest; damages for future credit monitoring and insurance; as well as her attorneys' fees and costs. *Id.* at p. 21, at "Prayer for Relief."

29.     In addition, between May 17, 2022 and October 18, 2022, a total of 107 claimants (collectively, the "JAMS Claimants") filed Demands for Arbitration against IRA Trust and Gemini before JAMS (the "JAMS Demands")[3].

30.     According to the JAMS Demands, the JAMS Claimants were victims "of a data breach and hack that took place on February 8, 2022 during which hundreds of Investment Retirement Accounts held by IRA [Trust] and Gemini were infiltrated by cyber-criminals." *See generally*, Comp. Ex. 3.

31.     According to the JAMS Demands, this hack resulted in the JAMS Claimants "losing a substantial portion [or majority] of [their life and/or retirement] savings," with estimated cryptocurrency values ranging from $84,861 to $842,250. *Id.*

32.     The JAMS Demands allege that while IRA Trust and Gemini continue to assign blame to one another[4], the JAMS Claimants' stolen funds have yet to be recovered. *Id.*

---

[3] A total of fourteen (14) Demands for Arbitration were filed on behalf of the 107 JAMS Claimants.

[4] In fact, on June 6, 2022, IRA Trust filed a Complaint against Gemini in the United States District Court for the Southern District of New York, bearing case number 1:22-cv-04672-AT, wherein IRA Trust asserted causes of action for Fraud, Negligence, Gross Negligence, Contribution, Defamation, Tortious Interference, and Violation of New York's Consumer Protection from Deceptive Practices Act against Gemini. IRA and Gemini have agreed to pursue their claims in arbitration. As such, the New York litigation is currently stayed pending arbitration.

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, Suite 3050, Miami, Florida 33131
Tel: (305) 530-0800 Fax: (305) 530-0801

33.     The JAMS Demands further allege that IRA Trust and Gemini made "false and unrealistic expectations" about the security of their platforms and ultimately "lacked sufficient security procedures and failed to implement what procedures they had in order to ensure the safety of [the JAMS Claimants'] sacrosanct IRA[s]." *Id.*

34.     The JAMS Demands assert various causes of action for: (1) Fraudulent Inducement; (2) Negligent Misrepresentation; (3) Fraudulent Misrepresentation; (4) Negligence; (5) Gross Negligence; (6) Violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, et seq.; (7) Breach of Contract; (8) Breach of Implied Contract; (9) Breach of the Implied Covenant of Good Faith and Fair Dealing; (10) Breach of Fiduciary Duty; (11) Aiding and Abetting Fraud and Breach of Fiduciary Duty; (12) Breach of Bailment; (13) Unjust Enrichment; and (14) violations of various state-specific consumer protection laws[5] (where applicable). *Id.*

35.     The JAMS Demands generally seek relief against IRA Trust and Gemini, jointly and severally, for compensatory damages; restitution and disgorgement of profits; an accounting; an award of attorney's fees, costs, and treble damages pursuant to the Electronic Funds Transfer Acts (and state-specific consumer protection laws, where applicable); exemplary and punitive damages, and all such other relief that is just and equitable. *Id.*

36.     The Arbitration Demands were tendered to Wesco by IRA for advancement of defense costs and indemnity.

37.     Upon receipt of notice of the Arbitration Demands, Wesco conducted a timely coverage investigation with regard to the Arbitration Demands and issued a Reservation of Rights,

---

[5] This includes violations of the Texas Deceptive Trade Practices Act; New Jersey Consumer Fraud Act; Virginia Consumer Protection Law; Pennsylvania Unfair Trade Practices and Consumer Protection Law; New York Consumer Protection from Deceptive Practices Act; California Consumers Legal Remedies Act; California Unfair and Deceptive Trade Practices Act and Unfair Competition Law; and Florida Securities Act.

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, Suite 3050, Miami, Florida 33131
Tel: (305) 530-0800 Fax: (305) 530-0801

including its right to file a declaratory judgment at any time to determine its duties to advance defense costs and/or provide indemnity in relation to the Arbitration Demands.

38.     As of the filing of this Complaint for Declaratory Judgment, and upon information and belief, the Arbitration Demands remain pending at various stages of their respective arbitration proceedings and no arbitration awards have yet been rendered.

**III.     The Customer Demands**

39.     Between February 10, 2022 and April 27, 2022, Gemini, along with various IRA customers, submitted various written demands, claims, and/or complaints stemming from the February 8, 2022 network security incident[6]. *See* Comp. Ex. 4.

40.     The Customer Demands generally allege that due to negligence and inadequate security, the customers' accounts were compromised, resulting in erroneous and unauthorized transfers from their accounts up to $1.8 million. *Id.*

41.     The Customer Demands generally seek, *inter alia*, investigation of the unauthorized activity, a return or replacement of their stolen cryptocurrency (or other recovery of their financial losses), and/or refunds of service fees charged by IRA. *Id.*

42.     The Customer Demands were tendered to Wesco by IRA for advancement of defense costs and indemnity.

43.     Upon receipt of notice of the Customer Demands, Wesco conducted a timely coverage investigation with regard to the Customer Demands and issued a Reservation of Rights, including its right to file a declaratory judgment at any time to determine its duties to advance defense costs and/or provide indemnity in relation to the Customer Demands.

---

[6] This includes several consumer complaints filed with local state consumer protection offices, including the New York Department of Financial Services and the South Dakota Department of Labor and Regulation – Division of Banking.

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, Suite 3050, Miami, Florida 33131
Tel: (305) 530-0800 Fax: (305) 530-0801

44.     As of the filing of this Complaint for Declaratory Judgment, and upon information and belief, the Customer Demands (which include the local state consumer complaints) remain pending and have not yet been resolved. In fact, a number of the IRA customers who submitted demands, claims, or complaints, also subsequently filed Demands for Arbitration.

## THE INSURANCE POLICY

45.     Wesco issued the Policy to IRA bearing policy number WDO1809368 02 for the policy period effective from March 3, 2021 to March 3, 2022. Ex. 5, Form PL-Fl-DEC 0414, at p. 1.

46.     Subject to its terms, conditions, exclusions, and endorsements, the Policy is subject to a $5,000,000 Single Limit of Liability for the Policy's Professional Liability Coverage Part and a $5,000,000 Policy Year Aggregate Limit of Liability, subject to a $25,000 per claim self-insured retention for Professional Services. Defense Expenses are part of, and not in addition to, the Limit of Liability. *Id.*

47.     The Policy's General Terms and Conditions Applicable to All Coverage Parts provide, in relevant part:

## SECTION I – GENERAL INFORMATION

These General Terms and Conditions apply to all **Coverage Parts** made a part of this **Policy.** Unless otherwise stated to the contrary, the terms and conditions of each **Coverage Part** apply only to that particular **Coverage Part.** If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any particular **Coverage Part,** the terms, conditions, and limitations for that particular **Coverage Part** shall apply.

## SECTION II – DEFINITIONS

Whenever appearing in this **Policy**, the following words and phrases appearing in bold type will have the meanings set forth below.

…

**Defense Expenses** means reasonable and necessary legal fees and expenses incurred by the **Insurer** or the **Insured**, with the **Insurer's** consent, in the

investigation, defense, settlement and appeal of a **Claim**, including but not limited to, cost of expert consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds (without the obligation to furnish such bonds) regarding such **Claim**. **Defense Expenses** will not include the salaries, wages, benefits or overhead of, or paid to, any **Insured** or any **Employee** of such **Insured**.
…

**Interrelated Wrongful Acts** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.
…

## SECTION III – LIMIT OF LIABILITY AND RETENTION

### A.     LIMIT OF LIABILITY

1. The amount set forth in Item 3. of the Declarations Page is the maximum **Policy Year** Aggregate Limit of Liability of the **Insurer** for all **Loss** from all **Claims** under all purchased **Coverage Parts**, regardless of the number of **Insureds**, **Claims** made, or persons or entities bringing such **Claims**. The Single Limit of Liability and the Separate Limit of Liability on the Declarations Page are sub-limits of the **Policy Year** Aggregate Limit of Liability which further limits and does not increase the **Insurer's** limit of liability.
…

### C.     SINGLE LIMIT / RETENTION – **Claims** based upon or arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** committed by one or more **Insureds** shall be considered a single **Claim**, and only one Retention and Limit of Liability shall apply. Each such single **Claim** shall be deemed to be first made on the date the earliest of such **Claims** was first made, regardless of whether such date is before or during the **Policy Period**.
…

## SECTION VI – DEFENSE OF CLAIMS, INSURED'S DUTIES AND RESPONSIBILITIES, ALLOCATION, AND ARBITRATION

### A.     DEFENSE OF CLAIMS – The **Insurer** does not assume any duty-to-defend a **Claim**. The **Insured** shall defend and contest any **Claim** made against them, provided that:

1. the **Insurer** will have the right to participate with the **Insured** in the investigation, defense and settlement, including the negotiation of a settlement of any **Claim** that appears reasonably likely to be covered in whole or in part by such **Coverage Part** and the selection of appropriate defense counsel;

2.  the **Insurer** may establish and provide to counsel for the **Insured** guidelines for the handling of **Claims** covered under this **Policy**. As a condition of the **Insurer's** obligation to pay **Defense Expenses**, counsel for the **Insured** shall adhere to the guidelines provided by the **Insurer** in the defense of such **Claims**. The **Insurer** shall not be obligated to pay **Defense Expenses** that have been incurred without observance of the guidelines, or that otherwise are unreasonable;

3.  upon written request, the Insurer will advance Defense Expenses with respect to such Claim. Such advanced payments by the Insurer will be repaid to the Insurer by the Insureds severally according to their respective interests in the event and to the extent that the Insureds are not entitled to payment of such Defense Expenses. As a condition of any payment of Defense Expenses under this subsection, the Insurer may require a written undertaking on terms and conditions satisfactory to the Insurer guaranteeing the repayment of any Defense Expenses paid to or on behalf of any Insured if it is finally determined that any such Claim or portion of such Claim is not covered.

**B.**   **INSURED'S DUTIES AND RESPONSIBILITIES** – It shall be the duty and responsibility of the **Insured**, as a condition precedent to any coverage under this **Policy**:

1.  to grant to the **Insurer** the right to associate itself in defense and settlement of any **Claim** that appears reasonably likely to involve the **Insurer**;

2.  not to, except at personal cost, make any payment, admit any liability, settle any **Claims**, assume any obligation, or incur any expense without the **Insurer's** written consent, which consent shall not be unreasonably withheld;

3.  to assert all appropriate defenses and to take all steps in defense of any **Claim** made, including but not limited to, releasing to the **Insurer** all copies of reports, investigations, pleadings and other papers as soon as reasonably possible and to provide the **Insurer** with such information, assistance and cooperation as the **Insurer** may reasonably request to determine the existence or extent of the **Insurer's** obligation; and

4.  to conduct all matters relative to any **Claim** or **Potential Claim** as if coverage under this **Policy** were not otherwise afforded, including but not limited to not admitting any liability for, settling any **Claim,** or incurring any **Defense Expenses** without the prior written consent of the **Insurer**, which consent shall not be unreasonably withheld.

Ex. 5, Form PL990158 0414, at pp. 1-6.

48.    The Policy's Financial Institution Professional Liability Coverage Part provides, in

relevant part:

## SECTION I – INSURING AGREEMENTS

…

B.    **PROFESSIONAL SERVICES LIABILITY** – The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from a **Claim** first made during the **Policy Period** or extended Reporting Period (if exercised), by or on behalf of a customer of the **Company** for a **Wrongful Professional Services Act**.

…

## SECTION II – DEFINITIONS

In addition to the Definitions set forth in General Terms and Conditions Applicable to All Insuring Agreements, the following Definitions apply to all Insuring Agreements contained herein.

…

**Claim** means:

1.    a written demand for monetary damages or non-monetary relief;

2.    a civil proceeding commenced by the service of a complaint or similar pleading;

…

against an **Insured** for a **Wrongful Act** including any appeal from such proceeding.

…

*Id.* at Form PL990163 0414, at pp. 1-2.

**Computer System** means any computer hardware, software, any components thereof, or other associated devices or equipment (including, but not limited to wireless and mobile devices), and are owned, operated, controlled, or leased by or on behalf of:

1.    the **Insured**;

2.    any third party from which the **Insured** receives services or products;

3.    any third party to which the **Insured** provides services or products; or

4.      any third party with which the **Insured** has a contractual relationship.

**Data Holder** means a third party:

1.      to which the **Insured** has provided **Protected Information**; or

2.      that has received **Protected Information** on behalf of the **Insured**.

*Id.* at Form PL991178 1020, at p. 1.

**Loss** means **Defense Expenses** and any amount the **Insured** is legally obligated to pay resulting from a **Claim**, including damages, judgments, settlements, punitive or exemplary damages or the multiple portion of any multiplied damage award (if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages), prejudgment and post judgment interest, and legal fees and expenses awarded pursuant to a court order or judgment. **Loss** shall not include:

1.      payroll or other taxes;

2.      criminal or civil fines or penalties imposed by law;

3.      any unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit to any **Borrower**, including unpaid, unrecoverable our outstanding amounts resulting from a loan, lease or extension of credit which has been sold as a participation to other financial institutions;

4.      costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, or in complying with any other federal, state or local laws of any kind;

5.      the depreciation (or failure to appreciate) in value of any investment product, including but not limited to securities, commodities, currencies, options or futures due to market fluctuation unrelated to any **Wrongful Act**;

6.      any restitution, disgorgement, or payment of similar payments including, but not limited to the return of fees, commissions or charges for the **Company's** services; or

7.      any matters which are uninsurable under the law pursuant to which this **Policy** shall be construed.

Where the **Company** reasonably determines that punitive, exemplary or multiple

damages are insurable under the applicable law, the **Insurer** shall not challenge that interpretation of insurability.

*Id.* at Form PL990163 0414, at pp. 2-3.

If Florida is the applicable jurisdiction, punitive and exemplary damages or the multiplied portion of any multiplied damage award are prohibited.

All other provisions of the definition of **Loss** shall remain unchanged.

*Id.* at Form PL990170FL 0414 (hereinafter, the "Florida Amendatory Endorsement"), at p. 2.

<u>**Professional Services**</u> means only the services set forth in the Specified Professional Services Schedule below that the **Insured** performs or is required to perform for or on behalf of a customer of the **Company** pursuant to a written agreement between such customer and the **Company** or, with respect to **Loan Servicing**, pursuant to a written agreement between a third party and the **Company**;

1.  for a fee, commission or other monetary compensation;

2.  for no fee, commission or other monetary compensation, if a fee, commission, or other monetary compensation would usually be received by the **Company** for such services, but for business or other reasons is waived or not charged by the **Company**; or

3.  for other remuneration which inures to the benefit of the **Company**.

<u>Specified Professional Services Schedule</u>:
- _X_  IRA Consultant Services

*Id.* at Form PL990219 0414, at p. 1.

<u>**Protected Information**</u> means any information of others in an **Insured's** or a **Data Holder's** care, custody or control or for which an **Insured** or **Data Holder** is legally responsible, including, but not limited to:

1.  any non-public information that is protected under the **Insured's** publicly available privacy policy (as amended);

2.  information from which an individual may be uniquely and reliably identified or contacted, or which allows access to an individual's financial, medical, or other records or accounts, including, but not limited to an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, account histories, usernames, authentication information, security information,

passwords, or biometric information;

3. any information about an individual that is not publicly available, including, but not limited to videos, photographs, internet browsing history, customer proprietary network information (CPNI), and geolocation information;

4. any information concerning an individual that is protected pursuant to any federal, state, local or foreign statute, law, rule, or regulation (as amended) intended to govern the correction, collection, retention, handling, control, disposal, processing, disclosure, sharing, sale, maintenance, acquisition, storage, access to, or use or misuse of personal, financial, medical or other sensitive information, including, but not limited to:

   a. Insurance Portability and Accountability Act of 1996 (as amended) (HIPAA) or the Health Information Technology for Economic and Clinical Health Act (HITECH Act) and their implementing regulations, or protected health-related information under any similar federal, state, local or foreign law;

   b. the Gramm-Leach Bliley Act of 1999 and its implementing regulations, or protected personal information under any similar federal, state, local or foreign statute, law or regulation;

   c. the California Security Breach Notification Act (CA SB 1386) and Massachusetts 201 CMR 17;

   d. the Identity Theft Red Flags under the Fair and Accurate Credit Transactions Act of 2003;

   e. Fair Credit Reporting Act;

   f. section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce;

   g. the Data Protection Act of 1998 or similar legislation to comply with the European Union Data Protection Directive 95/46/EC of 1995; or by the European Union General Data Protection Regulation (GDPR).

   h. New York Cybersecurity Regulation (23 NYCRR Part 500);

   i. the California Consumer Privacy Act of 2018;

   j. the Biometric Information Privacy Act; or

   k. other federal, state, local or foreign statutes, laws, rules, or regulations

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, Suite 3050, Miami, Florida 33131
Tel: (305) 530-0800 Fax: (305) 530-0801

similar to those described above;

5.      any information that is not publicly available, and which is held under an obligation, agreement, or understanding of confidentiality; or

6.      intellectual property including, but not limited to patents, trade secrets, data, designs, interpretations, forecasts, formulas, methods, practices, processes, records, reports, ideas, expressions of ideas, or other item of information that is not available to the general public.

*Id.* at Form PL991178 1020, at p. 2.

**Wrongful Act** means:
…

2.      solely with respect to Insuring Agreement B., any actual or alleged **Wrongful Professional Services Act**…
…

**Wrongful Professional Services Act** means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by any **Insured** in the rendering of, or failure to render **Professional Services**. **Wrongful Professional Services Act** does not include a **Wrongful Lending Act** or a **Wrongful Trust Services Act**.
…

## SECTION III – EXCLUSIONS

### A.      EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS
…

**Bonding/Insurance Company** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** brought directly or indirectly by or for the benefit of any insurance carrier or bond carrier of the **Company**, or any affiliate of the **Company**, regardless in whose name such **Claim** is actually made.

*Id.* at Form PL990163 0414, at pp. 4-5.

**Cyber Liability** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:

1.      theft, loss, disclosure, collection, storage, retention, inability to access, alteration or corruption of, or use or misuse of any **Protected Information**;

2. failure to report, respond to or disclose the theft, loss, disclosure, collection, storage, retention, inability to access, alteration or corruption of, or use or misuse of any **Protected Information**;

3. violation of any federal, state, local or foreign statute, law, rule, or regulation (as amended) governing the correction, collection, protection, retention, handling, control, disposal, processing, disclosure, sharing, sale, maintenance, acquisition, storage, access to, use or misuse of any **Protected Information**;

4. interruption, outage, inability to access, compromise of, or corruption of **Computer Systems** or any data residing thereon;

5. trading losses, trading liabilities or change in value of accounts; or

6. loss, transfer or theft of monies, securities or tangible property to, from, or in the care, custody or control of, the **Insured**.

*Id.* at Form PL991178 1020 (hereinafter, the "Cyber Liability Exclusion Endorsement"), at p. 1.

### C. EXCLUSIONS APPLICABLE TO PROFESSIONAL SERVICES LIABILITY AND TRUST SERVICES LIABILITY COVERAGES

…

**Fee Dispute** – The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any disputes over fees, commissions, or charges for the **Company's** services.

…

*Id.* at Form PL990163 0414, at p. 7 (hereinafter, the "Fee Dispute Exclusion").

**Lost Property** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to the actual physical loss of, or damage to, money, securities, property or other items of value in the care, custody or control of the **Company**, its correspondent bank or other authorized representative, including money, securities, property or other Items of value stored in a safe deposit box at, or in transit while in the care, custody or control of, the **Company**, its correspondent bank or other authorized representative.

*Id.* at p. 8 (hereinafter, the "Lost Property Exclusion").

### SECTION IV - OTHER TERMS AND CONDITIONS

This Section will supplement and not replace, Section XI., entitled "Other Terms And Conditions" contained in the General Terms and Conditions Applicable to All Coverage Parts.

…

B.  **OTHER INSURANCE** - This **Coverage Part** shall not be subject to the terms of any other insurance. All **Loss**, including **Defense Expenses**, payable under this **Policy** shall be excess to any other valid and collectible insurance available to any **Insured**, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this **Coverage Part** by reference in such other policy to the Policy Number assigned to this **Policy**.

*Id.* at p. 9 (hereinafter, the "Other Insurance Clause").

### COUNT I: CLAIM FOR DECLARATORY RELIEF
### (The Cyber Liability Exclusion Endorsement)

49.     Wesco repeats and re-alleges the allegations contained in Paragraphs 1 through 48 above with the same force and effect as if fully set forth herein.

50.     This is an action against the Defendants for declaratory relief in connection with the Policy.

51.     An actual, justiciable controversy has arisen over whether the Policy issued by Wesco to IRA provides coverage for the allegations raised against IRA by Griffin and the Claimants in their respective Claims.

52.     Wesco contends that the Policy does not provide coverage for the allegations raised against IRA in the Claims based upon the clear and unambiguous language of the Policy's Cyber Liability Exclusion Endorsement.

53.     In the Claims, Griffin and the Claimants seek, *inter alia*, damages arising from: the theft or loss of their cryptocurrency; the theft, loss, or disclosure of Protected Information; the use or misuse of Protected Information; and/or the inability to access or use Protected Information due

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, Suite 3050, Miami, Florida 33131
Tel: (305) 530-0800 Fax: (305) 530-0801

to an alleged Data Breach that affected their accounts. *See, e.g.*, Ex. 1 at ¶¶ 81, 111, 131, 133; *see generally*, Ex. 2, Comp. Ex. 3, and Comp. Ex. 4.

54.     The Policy's Cyber Liability Exclusion Endorsement, excludes coverage for:

    (1)     theft, loss, disclosure, collection, storage, retention, inability to access, alteration or corruption of, or use or misuse of any **Protected Information**;

    (2)     failure to report, respond to or disclose the theft, loss, disclosure, collection, storage, retention, inability to access, alteration or corruption of, or use or misuse of any **Protected Information**;

    (3)     violation of any federal, state, local or foreign statute, law, rule, or regulation (as amended) governing the correction, collection, protection, retention, handling, control, disposal, processing, disclosure, sharing, sale, maintenance, acquisition, storage, access to, use or misuse of any **Protected Information**;

    (4)     interruption, outage, inability to access, compromise of, or corruption of **Computer Systems** or any data residing thereon;

    (5)     trading losses, trading liabilities or change in value of accounts; or

    (6)     loss, transfer or theft of monies, securities or tangible property to, from, or in the care, custody or control of, the **Insured**.

Ex. 5 at Form PL991178 1020, at p. 1.

55.     Accordingly, Wesco is not obligated to advance and/or reimburse defense costs or indemnify IRA against the allegations asserted in the Claims.

56.     There exists a bona fide actual, present, and practical need for a declaration regarding coverage under the Policy and the rights and obligations of Wesco.

**WHEREFORE**, Plaintiff, Wesco Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that Wesco has no obligation to advance and/or reimburse defense costs or indemnify IRA under the Policy for the Claims; and (b) grant such other relief as the Court may deem just, proper, and equitable under the circumstances.

## COUNT II: CLAIM FOR DECLARATORY RELIEF
### (The Lost Property Exclusion)

57.　　Wesco repeats and re-alleges the allegations contained in Paragraphs 1 through 48 above with the same force and effect as if fully set forth herein.

58.　　This is an action against the Defendants for declaratory relief in connection with the Policy.

59.　　An actual, justiciable controversy has arisen over whether the Policy issued by Wesco to IRA provides coverage for the allegations raised against IRA by Griffin and the Claimants in their respective Claims.

60.　　Wesco contends that the Policy does not provide coverage for the allegations raised against IRA in the Claims based upon the clear and unambiguous language of the Policy's Lost Property Exclusion.

61.　　In the Claims, Griffin and the Claimants seek, *inter alia*, the return and/or payment for the loss of their cryptocurrency due to the alleged Data Breach/cyber hack that affected their respective accounts. *See, e.g.*, Ex. 1 at ¶¶ 109-110; *see generally*, Ex. 2, Comp. Ex. 3, and Comp. Ex. 4.

62.　　The Lost Property Exclusion excludes coverage for "**Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to the actual physical loss of, or damage to, money, securities, property or other items of value in the care, custody or control of the **Company**…." Ex. 5, Form PL990163 0414, at pp. 6, 8.

63.　　Accordingly, Wesco is not obligated to advance and/or reimburse defense costs or indemnify IRA against the allegations asserted in the Claims.

64.　　There exists a bona fide actual, present and practical need for a declaration regarding coverage under the Policy and the rights and obligations of Wesco.

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, Suite 3050, Miami, Florida 33131
Tel: (305) 530-0800 Fax: (305) 530-0801

**WHEREFORE**, Plaintiff, Wesco Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that Wesco has no obligation to advance and/or reimburse defense costs or indemnify IRA under the Policy for the Claims; and (b) grant such other relief as the Court may deem just, proper, and equitable under the circumstances.

## COUNT III: CLAIM FOR DECLARATORY RELIEF
### (The Insuring Agreement – Loss and the Florida Amendatory Endorsement)

65.      Wesco repeats and re-alleges the allegations contained in Paragraphs 1 through 48 above with the same force and effect as if fully set forth herein.

66.      This is an action against the Defendants for declaratory relief in connection with the Policy.

67.      An actual, justiciable controversy has arisen over whether the Policy issued by Wesco to IRA provides coverage for the Claims.

68.      Wesco contends that the Policy does not provide coverage for the allegations raised by Griffin and the Claimants against IRA in the Claims and, therefore, it has no duty to advance and/or reimburse defense costs or indemnify IRA due to Griffin and the Claimants' failure to trigger the Policy's Insuring Agreement.

69.      The Insuring Agreement B of the Professional Liability Coverage Part (Professional Services Liability) provides that "[t]he **Insurer** will pay on behalf of the **Insured, Loss** resulting from a **Claim** first made during the **Policy Period** or Extended Reporting Period (if exercised), by or on behalf of a customer of the **Company** for a **Wrongful Professional Services Act**." Ex. 5, Form PL990163 0414, at p. 1.

70.      The Policy defines "Loss" to mean, in relevant part, "**Defense Expenses** and any amount the **Insured** is legally obligated to pay resulting from a **Claim**, including damages, judgments, settlements, punitive or exemplary damages or the multiple portion of any multiplied

damage award (if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages), prejudgment and post judgment interest, and legal fees and expenses awarded pursuant to a court order or judgment." *Id.* at p. 2.

71.     The Policy's definition of "Loss" further states that "**Loss** shall not include: . . . costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, or in complying with any other federal, state or local laws of any kind; the depreciation (or failure to appreciate) in value of any investment product, including but not limited to securities, commodities, currencies, options or futures due to market fluctuation unrelated to any **Wrongful Act**; any restitution, disgorgement, or payment of similar payments including, but not limited to the return of fees, commissions or charges for the **Company's** services; or any matters which are uninsurable under the law pursuant to which this **Policy** shall be construed." *Id.* at pp. 2-3.

72.     In addition, the Florida Amendatory Endorsement (Form PL990170FL 0414) states that "[i]f Florida is the applicable jurisdiction, punitive and exemplary damages or the multiplied portion of any multiplied damage award are prohibited." *Id.* at Form PL990170FL 0414, at p. 2.

73.     The Insuring Agreement B of the Professional Liability Coverage Part (Professional Services Liability) is not triggered because the relief sought in the Claims does not constitute Loss as the term is defined by the Policy.

74.     Specifically, Griffin and the Claimants seek non-monetary and injunctive relief, including implementation of certain protocols and procedures, as well as restitution and

disgorgement of revenues "wrongfully retained as a result of" IRA's allegedly wrongful conduct. Ex. 1 at pp. 40-41, at "Wherefore" Clause; Comp. Ex. 3.

75.     Likewise, to the extent Griffin and the Claimants seek punitive damages and/or exemplary damages in the form of treble damages, such multiplied damage awards are expressly prohibited pursuant to the Policy's Florida Amendatory Endorsement.

76.     Accordingly, Wesco is not obligated to advance and/or reimburse defense costs or indemnify IRA against the allegations asserted by Griffin and the Claimants in the Claims.

77.     There exists a bona fide actual, present and practical need for a declaration regarding coverage under the Policy and the rights and obligations of Wesco.

**WHEREFORE**, Plaintiff, Wesco Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that Wesco has no obligation to advance and/or reimburse defense costs or indemnify IRA under the Policy for the Claims; and (b) grant such other relief as the Court may deem just, proper, and equitable under the circumstances.

## COUNT IV: CLAIM FOR DECLARATORY RELIEF
### (The Insuring Agreement – Wrongful Professional Services Act(s))

78.     Wesco repeats and re-alleges the allegations contained in Paragraphs 1 through 48 above with the same force and effect as if fully set forth herein.

79.     This is an action against the Defendants for declaratory relief in connection with the Policy.

80.     An actual, justiciable controversy has arisen over whether the Policy issued by Wesco to IRA provides coverage for the Claims.

81.     Wesco contends that the Policy does not provide coverage for the allegations raised by Griffin and the Claimants against IRA in the Claims and, therefore, it has no duty to advance

and/or reimburse defense costs or indemnify IRA due to Griffin and the Claimants' failure to trigger the Policy's Insuring Agreement.

82.     The Insuring Agreement B of the Professional Liability Coverage Part (Professional Services Liability) provides that "[t]he **Insurer** will pay on behalf of the **Insured, Loss** resulting from a **Claim** first made during the **Policy Period** or Extended Reporting Period (if exercised), by or on behalf of a customer of the **Company** for a **Wrongful Professional Services Act**." Ex. 5, Form PL990163 0414, at p. 1.

83.     The Policy defines "Wrongful Professional Services Act" to mean "any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by any **Insured** in the rendering of, or failure to render **Professional Services**." *Id.* at p. 4.

84.     The Policy defines "Professional Services" as:

**Professional Services** means only the services set forth in the Specified Professional Services Schedule below that the **Insured** performs or is required to perform for or on behalf of a customer of the **Company** pursuant to a written agreement between such customer and the **Company** or, with respect to **Loan Servicing**, pursuant to a written agreement between a third party and the **Company**;

1.     for a fee, commission or other monetary compensation;

2.     for no fee, commission or other monetary compensation, if a fee, commission, or other monetary compensation would usually be received by the **Company** for such services, but for business or other reasons is waived or not charged by the **Company**; or

3.     for other remuneration which inures to the benefit of the **Company**.

Specified Professional Services Schedule:

•     _ X _ IRA Consultant Services

*Id.* at Form PL990219 0414, at p. 1.

85.     The Insuring Agreement B of the Professional Liability Coverage Part (Professional Services Liability) is not triggered since there is no Wrongful Professional Services Act(s) alleged in the Claims as the term is defined by the Policy.

86.     Rather, there are a considerable number of paragraphs in the Claims that speculate as to what the IRA *could have and should have* implemented to prevent and detect cyberattacks, including the attack that resulted in the subject Data Breach/cyber hack, as well as how the Data Breach has caused disruption and put consumers at an increased risk of fraud and identity theft. *See, e.g.*, Ex. 1 at ¶¶ 73-78, 83-107; *see generally*, Comp. Ex. 3.  None of these activities constitute a Wrongful Professional Services Act.

87.     Accordingly, Wesco is not obligated to advance and/or reimburse defense costs or indemnify IRA against the allegations asserted in the Claims.

88.     There exists a bona fide actual, present and practical need for a declaration regarding coverage under the Policy and the rights and obligations of Wesco.

**WHEREFORE**, Plaintiff, Wesco Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that Wesco has no obligation to advance and/or reimburse defense costs or indemnify IRA under the Policy for the Claims; and (b) grant such other relief as the Court may deem just, proper, and equitable under the circumstances.

## COUNT V: CLAIM FOR DECLARATORY RELIEF
### (The Fee Dispute Exclusion)

89.     Wesco repeats and re-alleges the allegations contained in Paragraphs 1 through 48 above with the same force and effect as if fully set forth herein.

90.     This is an action against the Defendants for declaratory relief in connection with the Policy.

91.     An actual, justiciable controversy has arisen over whether the Policy issued by Wesco to IRA provides coverage for the allegations raised against IRA by the Claimants in their respective Claims.

92.     Wesco contends that the Policy does not provide coverage for the allegations raised against IRA in the Claims based upon the clear and unambiguous language of the Policy's Fee Dispute Exclusion.

93.     In the Claims, the Claimants seek, *inter alia*, a refund of prior service fees charged by IRA. *See, e.g.*, Comp. Ex. 4.

94.     The Fee Dispute Exclusion excludes coverage for "**Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any disputes over fees, commissions, or charges for the **Company's** services." Ex. 5, Form PL990163 0414, at p. 7.

95.     Accordingly, Wesco is not obligated to advance and/or reimburse defense costs or indemnify IRA against the allegations asserted in the Claims.

96.     There exists a bona fide actual, present and practical need for a declaration regarding coverage under the Policy and the rights and obligations of Wesco.

**WHEREFORE**, Plaintiff, Wesco Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that Wesco has no obligation to advance and/or reimburse defense costs or indemnify IRA under the Policy in the Claims; and (b) grant such other relief as the Court may deem just, proper, and equitable under the circumstances.

## COUNT VI: CLAIM FOR DECLARATORY RELIEF
### (The Other Insurance Clause)

97.     Wesco repeats and re-alleges the allegations contained in Paragraphs 1 through 48 above with the same force and effect as if fully set forth herein.

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, Suite 3050, Miami, Florida 33131
Tel: (305) 530-0800 Fax: (305) 530-0801

98.     This is an action against the Defendants for declaratory relief in connection with the Policy.

99.     An actual, justiciable controversy has arisen over whether the Policy issued by Wesco to IRA provides coverage for the Claims.

100.    Wesco asserts that it has no duty to advance and/or reimburse defense costs or indemnify IRA under the Policy until such time as all other insurance available to IRA has been exhausted.

101.    The Policy's Other Insurance clause contained in Section IV – Other Terms and Conditions of the Professional Liability Coverage Part provides that "[t]his **Coverage Part** shall not be subject to the terms of any other insurance. All **Loss,** including **Defense Expenses,** payable under this **Policy** shall be excess to any other valid and collectible insurance available to any **Insured,** including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this **Coverage Part** by reference in such other policy to the Policy Number assigned to this **Policy**." Ex. 5, Form PL990163 0414, at p. 8.

102.    The clause renders the Policy excess to all other valid and collectible insurance unless specifically written to be excess to the Policy. *Id.*

103.    Accordingly, notwithstanding any issues regarding lack of coverage, Wesco is not obligated to pay, reimburse, advance costs, or indemnify IRA against the allegations asserted in the Claims until all other applicable policies have been exhausted.

104.    IRA has purchased four (4) other insurance policies that it contends should provide coverage for the Claims. Further, IRA has provided notice of the Data Breach incident to these other insurance carriers under four (4) separate insurance policies: (1) a Commercial General Liability Policy, bearing policy number 1-660-9C44781A-TIL-21 (for the policy period March 14,

2021 to March 14, 2022), issued by Travelers; (2) a Business Owners Policy, bearing policy number ACP BPOL3057961368 (for the policy period October 15, 2021 to Oct. 15, 2022), issued by Allied Insurance Company of America; (3) a Financial Institution Bond policy, bearing policy number 1000057042211 (for the policy period October 14, 2021 to October 14, 2022), issued by Starr Indemnity & Liability Company; and (4) an Insured Persons Liability and Company Indemnification Policy, bearing policy number CBP6000222-01 (for the policy period October 14, 2021 to October 14, 2022), issued by Houston Specialty Insurance Company (the "HSIC Policy").

105.    Houston Specialty Insurance Company has agreed to provide a defense to IRA under a reservation of rights pursuant to the HSIC Policy.

106.    Accordingly, there is valid and collectible insurance available to IRA thus rendering the Policy excess to, *inter alia*, the HSIC Policy and relieving Wesco of any duty to advance defense costs until such time as all other valid and collectible insurance policies have been exhausted.

107.    Therefore, there exists a bona fide actual, present and practical need for a declaration regarding coverage under the Policy and the rights and obligations of Wesco.

**WHEREFORE**, Plaintiff, Wesco Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that Wesco has no obligation to advance and/or reimburse defense costs or indemnify IRA under the Policy with respect to the Claims until such time that all other insurance available to IRA has been exhausted; and (b) grant such other relief as the Court may deem just, proper, and equitable under the circumstances.

Dated this 27th day of October 2022.

Respectfully submitted,

**KAPLAN ZEENA LLP**
*Attorneys for Plaintiff, Wesco Insurance Company*

2 South Biscayne Blvd., Suite 3050
Miami, Florida 33131
Telephone:  (305) 530-0800
Facsimile:  (305) 530-0801

By: /s/ *James M. Kaplan*
    JAMES M. KAPLAN
    Florida Bar No.:921040
    james.kaplan@kaplanzeena.com
    elizabeth.salom@kaplanzeena.com
    service@kaplanzeena.com
    KIMBERLY S. HEIFFERMAN
    Florida Bar No.: 055996
    kimberly.heifferman@kaplanzeena.com
    julie.valdes@kaplanzeena.com
    cheryl.mingo@kaplanzeena.com
    MARIA KIMIJIMA
    Florida Bar No.: 115504
    maria.kimijima@kaplanzeena.com
    maria.escobales@kaplanzeena.com